NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

THE YF GROUP INC, et al., *Plaintiffs/Appellants*,

*v.*

FARMER ORTH LEAVITT INSURANCE AGENCY INC, et al.,
*Defendants/Appellees*.

No. 1 CA-CV 18-0464
FILED 5-9-2019

---

Appeal from the Superior Court in Maricopa County
No. CV2016-013374
The Honorable Teresa A. Sanders, Judge

**AFFIRMED**

---

COUNSEL

Gallagher & Kennedy, PA, Phoenix
By Jennifer A. Cranston
*Counsel for Appellants*

The Cavanagh Law Firm, Phoenix
By Frank M. Fox, Loren A. Suddes
*Counsel for Appellee*

---

**MEMORANDUM DECISION**

Presiding Judge David D. Weinzweig delivered the decision of the Court, in which Judge Kent E. Cattani and Judge James P. Beene joined.

---

**W E I N Z W E I G**, Judge:

**¶1**   The YF Group, Inc. ("YF") appeals the superior court's grant of summary judgment in favor of Westfield Insurance Company ("Westfield"). We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

**¶2**   YF hired Ashworth Construction, Inc. ("Ashworth") as general contractor for a construction project. Ashworth agreed to maintain various insurance policies and have them "endorsed to provide [YF] with thirty (30) days advance written notice of cancellation (ten (10) days in the event of cancellation for non-payment of premium)." Ashworth already had an existing commercial insurance policy (the "Policy") in place from Westfield, effective May 15, 2015 through May 15, 2016.

**¶3**   The Policy included an endorsement governing the procedures for cancellation and nonrenewal, which identified different notice requirements for cancellation "based on non-payment of premiums" and cancellation "for any of the other [listed] reasons." The Policy directed Westfield to mail "written notice of cancellation" to the "first Named Insured" and its insurance agent at least:

  a. 10 days before the effective date of cancellation if we cancel *for non-payment of premium*; or

  b. 45 days before the effective date of cancellation if we cancel for any of *the other [listed] reasons*.

Ashworth was the only "Named Insured" under the Policy.

**¶4**   YF's insurance agent emailed Ashworth's insurance agent in early July 2015 to confirm that YF would be "specifically named by endorsement" as an "additional insured" under the Policy "with 30 days notice of cancellation." Ashworth's agent confirmed "[t]he endorsement giving [YF] 30 days [notice of cancellation] has been requested and

approved; the form will be attached to the policy." Westfield then issued "Earlier Notice of Cancellation Provided By Us" endorsements to the YF entities (the "YF Endorsements"), providing that YF would receive 30 days' notice of cancellation "[f]or any statutorily permitted reason other than nonpayment of premium."

**¶5** Ashworth did not pay the January 2016 insurance premium on the Policy. On February 8, Westfield mailed the required written "Notice of Cancellation" to Ashworth and its insurance agent, indicating the Policy would be cancelled if Westfield did not receive a $3,886.58 payment by 12:01 a.m. on February 24. Westfield did not notify YF, but Ashworth informed YF about the notice of cancellation on February 21. Ashworth did not pay the unpaid premiums before the deadline and Westfield cancelled the Policy.

**¶6** YF sued Westfield in September 2016 for not providing written notice of cancellation to YF.[1] YF requested a declaration against Westfield "that there is coverage under the policies . . . during the period of lapsed coverage due to Westfield's failure to provide the contracted-for [notice of cancellation]."[2] YF has never alleged it suffered a loss that would have been covered under the Policy.

**¶7** On cross-motions for summary judgment, the court ruled that the insurance contract (the Policy and YF Endorsements) included "no provision" requiring Westfield to provide notice of cancellation for nonpayment of premium to YF as "additional insureds," and awarded Westfield its attorneys' fees in the amount of $52,300. YF moved for a new trial on the merits and for reconsideration of the fee award. Both motions were denied. YF timely appealed. We have jurisdiction pursuant to A.R.S. § 12-2101(A)(1).

---

[1] YF also filed a professional malpractice claim against Ashworth's insurance agent, Alena Avnukov and Farmer Orth Leavitt Insurance Agency, Inc. This claim was settled.

[2] Although not argued by the parties and not reached here, we question how the alleged breach would be material. YF received at least some advance notice and did not pay or attempt to pay the unpaid premium.

## DISCUSSION

**¶8**         Summary judgment is proper "if the moving party shows that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." Ariz. R. Civ. P. 56(a). We review the superior court's grant of summary judgment *de novo*, and consider the evidence and all reasonable inferences in the light most favorable to the non-moving party. *Lennar Corp. v. Transamerica Ins. Co.*, 227 Ariz. 238, 242, ¶ 7 (App. 2011). We likewise "review de novo the interpretation of insurance contracts." *First Am. Title Ins. Co. v. Action Acquisitions, LLC*, 218 Ariz. 394, 397, ¶ 8 (2008). We will affirm if the summary judgment is correct for any reason. *City of Tempe v. Outdoor Sys., Inc.*, 201 Ariz. 106, 111, ¶ 14 (App. 2001).

### A.     The Policy Is Unambiguous

**¶9**         We affirm the entry of summary judgment in Westfield's favor based on the plain and unambiguous notice requirements in the Policy and YF Endorsements. "We accord words used in policies their plain and ordinary meaning, examining the policy from the viewpoint of an individual untrained in law or business." *Teufel v. Am. Family Mut. Ins. Co.*, 244 Ariz. 383, 385, ¶ 10 (2018) (quotation omitted). A policy is ambiguous, however, if subject to "conflicting reasonable interpretations," and we interpret ambiguous policies "by examining . . . the transaction as a whole." *Id.* (quotation omitted).

**¶10**        The Policy's cancellation endorsement only required Westfield to provide "written notice of cancellation" to Ashworth as the "first Named Insured" and its insurance agent. The YF Endorsements only required Westfield to provide 30-day notice of cancellation to YF "[f]or any statutorily permitted reason *other than nonpayment of premium*." Ashworth failed to pay the January 2016 insurance premium. Westfield mailed written notice of cancellation for nonpayment of premiums to Ashworth and its insurance agent in February 2016, and then cancelled the Policy for "nonpayment of premium."

**¶11**        YF argues the court should have interpreted the Policy and YF Endorsements based on external evidence and public policy. YF also asserts that "someone untrained in the law of insurance" could conclude the YF Endorsements extended to cancellations for nonpayment because they "do[] not . . . say that 'no notice' will be provided for cancellation due to nonpayment." We disagree. The superior court properly interpreted the Policy and YF Endorsements based on their plain terms because the terms

are not susceptible to "conflicting reasonable interpretations." *Teufel*, 244 Ariz. at 385, ¶ 10; *Doneson v. Farmers Ins. Exch.*, 245 Ariz. 484, 487, ¶¶ 7-8 (App. 2018). Absent evidence of mutual mistake, we conclude the Policy and YF Endorsements were not reasonably susceptible to YF's alternative interpretation.

**¶12** YF offers three Arizona statutes for its argument, A.R.S. § 20-1632(A), § 20-1632.01(B) and § 20-1674(B), but the statutes only require notice of cancellation to the "policyholder" or "named insured," meaning to Ashworth. YF further contends it should have received notice based on the contract between YF and Ashworth, which required Ashworth to procure an insurance policy that "provide[d] [YF] with . . . ten (10) days' notice of cancellation for non-payment of premium." We are not persuaded. Westfield was not bound by that contract. Nor did YF offer evidence that Westfield knew or had reason to know about the contract term.

### B. The Reasonable Expectations Doctrine Does Not Apply

**¶13** YF also contends the court's interpretation violated its reasonable expectations. Courts will generally not enforce unambiguous boilerplate terms in a standardized insurance contract if they violate the reasonable expectations of the insured. *See Beaver v. Am. Family Mut. Ins. Co.*, 234 Ariz. 584, 588, ¶ 16 (App. 2014).

**¶14** YF asserted its reasonable expectations arguments for the first time in its motion for new trial. Issues first raised to the superior court on a motion for new trial are typically waived on appeal. *See Conant v. Whitney*, 190 Ariz. 290, 293 (App. 1997). Even if properly raised, however, the argument is not persuasive here for several reasons. First, the notice provision is clear and unambiguous. *Am. Family Mut Ins. Co. v. White*, 204 Ariz. 500, 507, ¶ 19 (App. 2003) (rejecting a "reasonable expectations" revision to an insurance policy where "policy language is clear, unambiguous, and objectively reasonable; the exclusion is not lengthy, confusing, complex, or buried in the policy").

**¶15** Second, the YF Endorsements were negotiated rather than boilerplate and buried in a contract of adhesion; the relevant terms were extracted from the email dialogue between YF's and Ashworth's insurance agents. *See Philadelphia Indem. Ins. Co. v. Barerra*, 200 Ariz. 9, 14, ¶ 12 (2001) ("[T]he doctrine of reasonable expectations relieves a party from certain clauses of an agreement which he did not negotiate, probably did not read, and probably would not have understood had he read them.") (quotation

omitted); *Averett v. Farmers Ins. Co.*, 177 Ariz. 531, 532 (1994) ("It is well established that a contracting party's reasonable expectations may affect the enforceability of *non-negotiated* terms in a standardized agreement.") (emphasis added).

**¶16** Moreover, additional insureds are generally not entitled to notice of cancellation for nonpayment of premiums unless specifically designated under the policy. Steven Plitt et al., *Couch on Insurance* § 31.21 (3d ed. Supp. 2018). YF was not specifically designated to receive such notice under the Policy or YF Endorsements. Nor did YF offer evidence that Westfield induced it to believe and it reasonably believed the policy and endorsement had any such designation. The record instead indicates YF's agent requested YF "be specifically named by endorsement with 30 days notice of cancellation," which the YF Endorsements provided.

**¶17** At most, YF argues Ashworth's agent may have believed Westfield was obligated to provide the contested notice. But the belief of Ashworth's insurance agent is irrelevant to whether the written YF Endorsements violated YF's reasonable expectations. *See State Farm Fire & Cas. Co. v. Powers By & Through Fleming*, 163 Ariz. 213, 216 (App. 1989) (declining to apply reasonable expectations doctrine where "[t]here was no evidence that *the insurance company* had reason to believe that [the insureds] would not have accepted the insurance policy if they had known of the exclusion").[3] The court thus did not err in entering summary judgment for Westfield.

### C. Attorneys' Fees

**¶18** YF contends the attorneys' fees award to Westfield was unjustified solely because it "sends an intimidating message to similarly-situated insureds." *See Associated Indem. Corp. v. Warner*, 143 Ariz. 567, 570 (1985) ("[T]he trial court should consider whether the award in any particular case would discourage other parties with tenable claims or defenses from litigating or defending legitimate contract issues for fear of incurring liability for substantial amounts of attorney's fees."). We review fee awards for an abuse of discretion and may affirm if the award is

---

[3] Westfield also contends the reasonable expectations doctrine does not apply because (1) it only can be asserted when coverage is denied for a loss and (2) it does not apply to additional insureds who do not pay premiums. We need not reach these issues.

supported by any reasonable basis in the record. *Peterson v. City of Surprise*, 244 Ariz. 247, 253, ¶ 25 (App. 2018).

**¶19** The court did not abuse its discretion. The prevailing party qualified for an award of attorneys' fees and costs under A.R.S. § 12-341.01. YF did not argue the superior court should reject or discount the award as excessive. The statute includes no exception for insurance contracts and YF's general concern about larger messages to future litigants does not alone establish error. *City of Tempe v. State*, 237 Ariz. 360, 368, ¶ 32, n.9 (App. 2015) ("A party opposing a fee request does not meet its burden merely by asserting broad challenges to the [fee] application.") (quotation omitted). We affirm the award.

**¶20** Westfield and YF seek their attorneys' fees on appeal pursuant to A.R.S. § 12-341.01. YF's declaratory relief claim arises from the Policy and the YF Endorsements. We therefore grant reasonable attorneys' fees to Westfield as the prevailing party and deny YF's request. Westfield is also entitled to its costs upon compliance with ARCAP 21.

## CONCLUSION

**¶21** We affirm the superior court's grant of summary judgment and fee award, and award Westfield taxable costs and reasonable attorneys' fees upon compliance with ARCAP 21.



AMY M. WOOD • Clerk of the Court
FILED: AA